## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SKYBITZ TANK MONITORING CORPORATIION AND SKYBITZ PETROLEUM LOGISTICS, LLC, | |
| Plaintiffs and Counterclaim-Defendants, | Case No. 22-cv-6294 |
| v. | Judge Mary M. Rowland |
| FLEETWING CORPORATION, | |
| Defendant and Counterclaim-Plaintiff. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs and Counter-Defendants SkyBitz Tank Monitoring Corporation and SkyBitz Petroleum Logistics, LLC ("Plaintiffs") brought two claims for breach of contract against Defendant and Counter-Complainants Fleetwing Corporation ("Defendant"). [33]. Defendant subsequently brought counterclaims for two counts of breach of contract against Plaintiffs. [35]. Before the Court now is Plaintiffs' motion for partial summary judgment on Count I for breach of the Tank Agreement and Defendant's Counterclaims and Affirmative Defenses related to Count I and the Tank Agreement. [71]; [72]. For the reasons stated below, Plaintiffs' motion is granted in part and denied in part.[1]

---

[1] After the close of summary judgment briefing, Defendant Fleetwing moved to supplement the record with additional deposition testimony of Bradley Strickland, Fleetwing employee, and related deposition exhibits. [79]. Given the disposition of Plaintiffs' motion for summary judgment, the Court finds no prejudice in granting Fleetwing's request to supplement the record. Over Plaintiffs' objections, the Court grants Fleetwing's motion. *See Christensen v. Weiss*, 145 F.4th 743, 755 (7th Cir. 2025).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

2

## BACKGROUND[2]

### I.     The Tank Agreement

Plaintiff SkyBiz provides wireless monitoring solutions for mobile and other assets, including trailers and tanks, among other services. [35] ¶ 9. Defendant Fleetwing Corporation is a petroleum distributor of fuels, lubricants, and other materials within Florida. *Id.* ¶ 9.

On or around January 29, 2016, Fleetwing entered into a Data Service Agreement (the "Tank Agreement") with TankLink, a predecessor-in-interest of SkyBitz Tank. [75] ¶ 16; [73-6] Tank Agreement. Under the Tank Agreement, SkyBitz Tank provided operational tank monitoring units and a subscription-based service to Fleetwing, while SkyBitz Tank retained ownership of the tank monitoring units. [75] ¶¶ 17–18, 20; [73-6] Tank Agreement at §§ 1.0, 4.5 ("Tank shall provide Equipment that is operational and capable of collecting data that is required by Customer's Subscription.").

The services SkyBitz Tank provided to Fleetwing with respect to each tank monitoring unit are defined as Subscriptions in the parties' contract. [73-6] Tank Agreement at § 1.0. New Subscriptions are established through the execution of order forms that "identify and describe the specific Services ordered by Customer." *Id.* at § 4.1. Under the subscription-based service, the tank monitoring units reported various data points related to tank levels, usage history, alarms, notifications, and

---

[2] The facts in this Background section are undisputed unless otherwise noted. The Court takes these facts from Defendant's Response to Plaintiffs' Statement of Material Facts [75] and Plaintiff's Response to Defendant's Statement of Material Facts [78].

other information regarding the storage tanks on which Fleetwing installed the monitoring units. In exchange for use of the monitoring units and related services, Fleetwing paid monthly fees to SkyBitz Tank. [73-6] Tank Agreement at §§ 1.0, 3.1, 3.2. The Tank Agreement includes various relevant provisions governing payment under the contract, the economics of any breach or termination, and objections to billings. *Id.* at §§ 2.2, 3.3, 4.2, 7.1, 7.2, 12, 14.

## II. Billing Disputes

The Tank Agreement specifies a process for replacing non-operational monitoring units. *See* [73-6] Tank Agreement at § 4.6. To obtain a replacement unit, Fleetwing was to notify SkyBitz Tank in writing that a unit was non-operational, obtain a Return Material Authorization ("RMA") from SkyBitz Tank, and ship the non-operational unit to a designated location at Fleetwing's expense after receiving the RMA from SkyBitz Tank. *Id.* On November 20, 2020, SkyBitz's Customer Success Manager, Sarah Deitch, emailed the SkyBitz's Telemetry Support staff to inform them that a Fleetwing employee identified 36 units that needed RMAs. [75-6] Egan Dep. Exh. 6 at SKYBITZ_0004099–100. A few days later, Deitch sent the Telemetry Support staff a list of 33 units for which RMAs should issue; she followed up on the status of the RMAs in early December 2020. *Id.* at SKYBITZ_0004095–97. On June 16, 2021, a SkyBitz customer support specialist emailed Dietch stating the RMAs "seemed to have fallen through the cracks," but he agreed to create the RMAs for the 33 units previously indicated. *Id.* at SKYBITZ_0004095. SkyBitz continued to bill Fleetwing for the 33 units subject to the RMA process from December 2020 through

at least June 2021. [75] ¶ 37; [78] ¶ 7.

The parties dispute their history of communications regarding billing disputes and Plaintiffs' representations regarding adjustments to bills and pending charges. [78] ¶¶ 9–16. However, it is undisputed that Fleetwing raised concerns about its billing rates and charges for inoperable services and equipment and had requested an account audit. *See, e.g.*, [76-6] Troiano Dep. Exh. 4 at SKYBITZ_0001047 (4/26/21 email from Fleetwing requesting "an adjustment to the current terms since [Fleetwing] believe[s] these terms were not as agreed" and a credit to current bills); [76-7] Deitch Dep. 76:1–78:19; [78] ¶ 14. And it is undisputed no full audit was conducted. [78] ¶ 14. According to Plaintiffs, Fleetwing failed to follow through on the audit specifically ([76-7] Deitch Dep. 76:1–78:24) or in cleaning up their accounts more generally ([78-1] at SKYBITZ_0001496 (7/26/22 email from S. Deitch stating "[Fleetwing] were given a customer success manager and could've utilized me vs having to wait for Telemetry support, etc. However, they never stayed engaged, even though we prodded them – for years – to clean up their account.").

Fleetwing stopped paying invoices under the Tank Agreement starting with a June 10, 2021 invoice issued by SkyBitz Tank. [75] ¶¶ 28, 30; *see also* [73-8] SkyBitz Tank Monitoring Statement dated 6/30/22 identifying Document No. 0721-FLE00001, dated 6/10/21. Pursuant to the Tank Agreement, "[s]hould customer fail to pay any fees or charges due . . . such failure shall constitute a material breach and default under this Agreement" and SkyBitz Tank is permitted to avail itself of various

remedies, including to cancel a Subscription.[3] [73-6] Tank Agreement at § 7.1. After Fleetwing ceased payments, Plaintiffs suspended Fleetwing's access to the online customer portal on October 5, 2021. [78] ¶¶ 18–19. According to Plaintiffs, when a customer's access to the portal is suspended, the tank monitoring units continue to work and transmit data while SkyBitz Tank continues to receive and host data. *Id.*

## III.    End of Relationship and Litigation

The last monthly invoice issued pursuant to the Tank Agreement was issued on November 11, 2021. [75] ¶ 29; *see also* [73-8] SkyBitz Tank Monitoring Statement dated 6/30/22 identifying Document No. 1221-FLE00001, dated 11/11/21. SkyBitz Tank charged Fleetwing $20,820.05 per month from June to November 2021. [75] ¶ 37; [73-8]. On July 1, 2022, Plaintiffs issued Fleetwing a final invoice totaling $607,810.64, which included $313,108 for early termination and $156,504 for non-returned units plus tax. [73-8] SkyBitz Tank Monitoring Statement dated 6/30/22 identifying Document No. INV00074441, dated 6/30/22; [76-12] SkyBitz Tank Monitoring Invoice No. INV00074441, dated 6/30/22.

Plaintiffs initiated this litigation on November 10, 2022. [1]. The First Amended Complaint ("FAC") alleges Fleetwing breached the Tank Agreement (Count I) and another agreement between the parties, the Software and Hardware Purchase Proposal (Count II). [33] ¶¶ 34–50. Fleetwing filed its Answer, Affirmative Defenses, and Counterclaim to the FAC on April 12, 2023. [35]. Fleetwing pleaded an

---

[3] The Tank Agreement requires SkyBitz Tank provide 30 days' prior written notice to permit the customer to cure the default. [73-6] Tank Agreement at § 7.1. Neither party addresses whether written notice was provided here.

affirmative defense and a counterclaim alleging Plaintiffs breached the Tank Agreement and the implied covenant of good faith and fair dealing first. [35] at 13–20. Fleetwing alleged it was owed damages from Plaintiffs for their prior breach. *Id.* at 21–22.

Plaintiffs' damages expert calculated it is owed $607,811 in damages under the Tank Agreement plus $105,459 in interest for a total of $713,270, which was adjusted downward to $712,256 by SkyBitz Tank's damages expert. [75] ¶¶ 40–41. These damages claimed include unpaid invoices, early termination fees, and lost unit fees, among other damages. [78] ¶ 17. Fleetwing disputes the accuracy of SkyBitz Tank's calculations because Plaintiffs' damages expert did not confirm or review customer order forms for all of the monitors on which Plaintiffs seek liability and damages or whether any of the units on which Plaintiffs are seeking recovery were subject to any outstanding RMAs. [75] ¶¶ 40, 44. Fleetwing claims the charges on units subject to RMAs accounts for a discrepancy of $596.05 per month, or overcharging Fleetwing $3,576.30 by July 2021. *Id.* ¶ 45.

## ANALYSIS

Plaintiffs move for summary judgment on Count I and on Defendant Fleetwing's related affirmative defenses, counterclaim, and offsets. Plaintiffs argue they are entitled to summary judgment on their claim that Fleetwing breached the Tank Agreement. Under Illinois law,[4] to succeed on a breach of contract claim, a plaintiff must establish "(1) the existence of a valid and enforceable contract;

---

[4] There is no dispute the Tank Agreement is "governed by, subject to, and interpreted in accordance with the laws of the State of Illinois." [73-6] Tank Agreement at §14.0.

(2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (quoting *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr. Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 1st Dist. 2001)). Fleetwing contends there are material disputes regarding Plaintiffs' performance under the Tank Agreement and claimed damages, thus summary judgment must be denied.

## I.     Contractual Limitations

Plaintiffs contend Fleetwing's affirmative defenses, counterclaim, and offsets (to the extent Fleetwing's Answer, Affirmative Defenses, and Counterclaim can be interpreted to seek offset) are barred or limited by three different provisions of the Tank Agreement: (a) the one-year limitations period; (b) the limited liability provision; and (c) the written notice requirement. [72] at 5–12. Fleetwing contests its affirmative defenses and counterclaim are barred or otherwise limited because (a) Plaintiffs cannot rely on the terms of a contract it breached first; (b) the Tank Agreement's contractual statute of limitations does not limit affirmative defenses; and (c) Plaintiffs waived the right to raise lack of contractual notice. [74] at 8–12. The Court addresses each argument in turn.

### a.  Prior Material Breach

Fleetwing argues Plaintiffs cannot invoke the contractual limitations in the Tank Agreement because Plaintiffs were the first-to-breach. [74] at 8–11. Generally, a party that materially breaches a contract first cannot take advantage of the terms

8

of the contract which benefits it, nor can the first-to-breach seek to enforce the contract against the other party. *PML Dev. LLC v. Vill. of Hawthorn Woods*, 226 N.E.3d 1163, 1175 (Ill. 2023). Before analyzing Fleetwing's argument against the application of contractual limits, the Court must make a predicate determination of whether Plaintiffs were the first party to materially breach the Tank Agreement. But, as explained further herein, no reasonably jury could find Plaintiffs committed a prior breach. Accordingly, the Court cannot prohibit Plaintiffs from invoking the relevant contractual limitations (*i.e.*, time bar, liability limit, or notice provision) based on Fleetwing's affirmative defense.

### b. Time Bar

Plaintiffs assert Fleetwing's counterclaim, affirmative defenses, and offsets are barred by the one-year limitations period in the Tank Agreement. [72] at 5–8. Fleetwing responds that the Tank Agreement does not extend to limit affirmative defenses. [74] at 10–11. The Court agrees with Fleetwing; the Tank Agreement does not limit affirmative defenses.

The Tank Agreement states: "No action arising from or related to this Agreement or the subject matter hereof may be brought by [Fleetwing] more than one (1) year after the cause of action accrued." [73-6] at § 4.6. Parties to a contract may agree to set a reasonable time limit within which a suit on the contract must be filed. *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990) (collecting Illinois cases). Such contractual provisions that limit the time within which to initiate a lawsuit to one-year routinely are recognized as valid and are

enforced against corporate entities. *Id.*; *see also DreamPak, LLC v. InfoData Corp.*, 2019 WL 130448, at *3 (N.D. Ill. Jan. 8, 2019). Here, there is no dispute as to the validity of the limitations period in the Tank Agreement, rather the parties dispute the scope and effect of the provision.

Under Illinois law a counterclaim qualifies as an action. *Ammons v. Canadian Nat'l Ry. Co.*, 161 N.E.3d 890, 897 (Ill. 2019) ("A counterclaim . . . is an independent cause of action seeking to assert rights against another"), *as modified on denial of reh'g* (Jan. 27, 2020); *Wilson v. Tromly*, 89 N.E.2d 22, 24 (Ill. 1949) ("A counterclaim is an independent cause of action."). Fleetwing does not dispute that its counterclaim is an action within the scope of the Tank Agreement limitation period nor does it contest that its counterclaim is time-barred. *See Candell v. Shiftgig Bullpen Temporary Employment Agency*, 2019 WL 2173797, at *3 (N.D. Ill. May 20, 2019) ("A non-movant's failure to respond to arguments addressed in a summary judgment motion results in a waiver."). Having conceded its counterclaim is barred, Fleetwing focuses on its affirmative defense instead.

As a general rule, statutes of limitations do not run on defenses. *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1013 (N.D. Ill. 2010) (explaining statute of limitations is a shield, not a sword). "[A]n affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (quoting Defense, Black's Law Dictionary (10th ed. 2014)) (internal alterations and quotation marks omitted). Prior material breach is well established

as an affirmative defense under Illinois law. *Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1115 (7th Cir. 1992) (collecting Illinois cases).

Plaintiffs argue Fleetwing's affirmative defense of prior material breach is Defendant's "identical" counterclaim repackaged. [77] at 2–3. Federal courts distinguish between when a defendant seeks to reduce the amount a plaintiff can recover through such defensive claims and those where a defendant is seeking affirmative relief over and beyond defeating a claim. *U.S., Dep't of the Navy v. Norden Enters., LLC*, 2004 WL 42318, at *2 (N.D. Ill. Jan. 6, 2004). The former typically are not time barred but the latter are. *Id.* Here, Fleetwing may assert its affirmative defenses, including a defense of prior material breach, to avoid the legal effect of or defeat Plaintiffs' contract claims[5]. *See Int'l Bus. Lists, Ltd. v. Am. Tel. & Tel. Co.*, 878 F. Supp. 102, 105–06 (N.D. Ill. 1994) (finding breach of contract counterclaim was time barred by contractual limitations period and explaining that defendant can use defensively allegations of breach to bar plaintiff's claims).

### c. Written Notice

Plaintiffs argue Fleetwing's complaints about invoices and billing also are barred because Fleetwing did not comply with the written notice terms of the Tank Agreement. [72] at 10–12. The Tank Agreement states: "[Fleetwing] must notify

---

[5] To the extent Fleetwing is pursuing setoff, that demand seeks affirmative relief above and beyond defenses to Plaintiffs' claims. *Pro. Serv. Indus., Inc. v. Dynamic Dev. Co., LLC*, 2017 WL 6039870, at *8 (N.D. Ill. Dec. 6, 2017) ("setoff is a counterclaim that seeks affirmative relief or mitigation of damages that a liable defendant owes to a plaintiff."), *vacated on other grounds*, 2018 WL 3389705 (N.D. Ill. July 12, 2018). Consistent with the Court's holding that Fleetwing's counterclaims, including offset, are time barred under the parties' contract, the Court need not address the enforceability of the Limitation of Liability Provision at Section 12 of the Tank Agreement. In any event, Fleetwing does not respond to this point, and thus the argument is waived. *Candell*, 2019 WL 2173797, at *3.

[SkyBitz Tank] in writing of any dispute with invoiced charges prior to the date when payment for such invoice is due." [73-6] Tank Agreement at § 2.2. And "[a]ll notices and other communications required or permitted to be given under this Agreement shall be in writing and hand-delivered, mailed by certified mail, . . . or sent by an overnight courier." *Id.* at § 14. In response, Fleetwing contends Plaintiffs waived their right to argue lack of contractual notice because their course of conduct modified the terms of the contract. [74] at 11–12. The Court agrees with Fleetwing; Plaintiffs waived their right to enforce the written notice provisions of the Tank Agreement.

Plaintiffs assert waiver requires "the intentional relinquishment of a known and existing right," and dispute they agreed to waive written notice from Fleetwing related to alleged breaches of contract. [77] at 7–8 (quoting *Cmty. Convalescent Ctr. of Naperville, Inc. v. First Interstate Mortg. Co. of Ill.*, 537 N.E.2d 1162, 1164 (Ill. App. Ct. 2d. Dist. 1989) (finding defendants' actions inconsistent with their contract rights constituted waiver of notice provision)). True, but as Plaintiffs' own cases make clear, "[w]aiver of a contractual provision may be established by conduct indicating that strict compliance with the [relevant contract] provisions will not be required." *Cmty. Convalescent Ctr.*, 537 N.E.2d at 1164. The sufficiency of facts necessary to constitute waiver of a contractual provision is a question of law. *Id.*

There is no genuine dispute that Fleetwing and Plaintiffs regularly corresponded via telephone and email regarding invoiced charges. *See, e.g.*, [75] ¶ 27; [78] ¶ 15. Nor is there any dispute that Fleetwing did not submit any evidence that it complied with the written notice requirements under Tank Agreement Sections 2.2

12

and 14. *Id.* But, when Fleetwing raised concerns about the invoiced charges via phone and email, Plaintiffs initiated processes to work with Fleetwing to address Fleetwing's concerns. *See, e.g.*, [76-7] Deitch Dep. 76:1–78:24 (SkyBitz's Customer Success Manager explaining she worked with Fleetwing employees to clean up accounts). Responding to communications about invoice disputes was inconsistent with Plaintiffs' right to written notice. Plaintiffs could have rejected Fleetwing's outreach and demanded Fleetwing strictly comply with the written notice requirements under the Tank Agreement. They did not. Instead, Plaintiffs' employees attempted to connect with Fleetwing. Thus, the Court concludes Plaintiffs' actions constituted a waiver of the notice provision. *Richelieu Foods, Inc. v. New Horizon Warehouse Distribution Ctr., Inc.*, 67 F. Supp. 3d 903, 913 (N.D. Ill. 2014) (quoting *Wells v. Minor*, 578 N.E.2d 1337, 1346 (Ill. App. 4th Dist. 1991) ("A party to a contract may not lull another into false assurance that strict compliance with a contract duty will not be required and then sue for noncompliance.")).

## II. Plaintiffs' Performance

Fleetwing argues Plaintiffs have not satisfied their burden to demonstrate performance under the Tank Agreement for at least two reasons, thus rendering the contract unenforceable. First, Fleetwing contends Plaintiffs breached the Tank Agreement by charging Fleetwing for defective tank monitors. [74] at 5–6. And second, Fleetwing argues Plaintiffs have not shown that Fleetwing ordered the units underlying the invoices for which Plaintiffs seek recovery. *Id.* at 6–8. Accordingly, Fleetwing maintains Plaintiffs cannot recover due to their prior breach of the Tank

13

Agreement. The Court concludes Plaintiffs have satisfied their burden to establish substantial performance and Fleetwing has not shown a material dispute of fact regarding prior material breach.

"A party cannot sue for breach of contract without alleging and proving that he has himself substantially complied with all the material terms of the agreement," meaning that "a material breach of a contract will excuse the other party's performance." *Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011) (cleaned up); *see also Elda Arnhold & Byzantio, LLC v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (same). But "only a material breach of a contract provision will justify non-performance by the other party," *Borys v. Rudd*, 566 N.E.2d 310, 315 (Ill. App. Ct. 1st Dist. 1990) (collecting cases), "a minor nonmaterial breach by the plaintiff will not preclude . . . performance," *Regan v. Garfield Ridge Trust & Sav. Bank*, 581 N.E.2d 759, 765 (Ill. App. Ct. 2d Dist. 1991) (citing cases). Thus, the relevant question is whether a reasonable factfinder could conclude that Plaintiffs indeed breached the Tank Agreement and, if so, whether the breach was sufficiently material to allow Fleetwing to avoid its contractual obligations.

To determine whether a breach is material, the Court considers "whether it is 'so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether the failure to perform renders performance of the rest of the contract different in substance from the original agreement.'" *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1027 (Ill. App. Ct. 1st Dist. 2012) (quoting *Vill. of Fox Lake v. Aetna Cas. & Sur. Co.*, 534 N.E.2d 133, 141 (Ill. App. Ct. 2d Dist.

14

1989)). *See also Sahadi v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983) ("[T]he determination of 'materiality' is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage."). In other words, Courts ask whether the performance of the provision at issue "was a *sine qua non* of the contract's fulfillment." *Id.* at 198.

### a. Overbilling – Units Subject to RMA

The Court first turns to whether Plaintiffs committed a prior breach of the Tank Agreement by charging Fleetwing for non-operational tank monitor units that should have been replaced pursuant to the RMA process. *See* [74] at 5–6. No reasonable jury could conclude charging for the units subject to the RMA process constitutes a prior material breach.

There is no dispute here that Plaintiffs were obligated to provide operational monitoring units capable of collecting data. [73-6] Tank Agreement at §§ 1.0, 4.5. Nor is there any dispute that SkyBitz Tank issued invoices to Fleetwing between December 2020 and June 2021 that included charges for 33 units subject to the RMA process. [75] ¶ 37; [78] ¶ 7. However, the parties dispute what Fleetwing was entitled to under the Tank Agreement during the RMA process, and thus whether Plaintiffs' conduct even constitutes a breach of the Agreement. Fleetwing argues Plaintiffs were

required to "promptly" process the RMAs and were not permitted to charge Fleetwing for the 33 units. [74] at 5–6. Whereas SkyBitz contends, at most, the Tank Agreement entitles Fleetwing to replacement units and that a seventh-month period to process the RMAs is not unreasonable or untimely given that the Tank Agreement does not impose a specific period for processing RMAs. [78] ¶¶ 6–7.

Interpretation of the contract generally is a question of law for the court. *Continental Cas. Co. v. Northwestern Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). But the Court need not determine the obligations under the Tank Agreement. Even assuming *arguendo* that Fleetwing's interpretation is correct and Plaintiffs billing constitutes overcharge and thus a breach, *Cynergy Data LLC v. BMO Harris Bank N.A.*, 2019 WL 1098920, at *3–4 (N.D. Ill. Mar. 8, 2019), no reasonable jury could conclude that Plaintiffs materially breached the Tank Agreement because it charged for 33 non-operational units for a period of approximately seven months. *Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 594 (7th Cir. 2009) ("Although the interpretation of an established written contract is generally a question of law for the court, the question of whether or not a particular breach of a contract is material is a question of fact.") (internal citations omitted) (citing *Holmes v. Potter,* 552 F.3d 536, 538 (7th Cir. 2008)).

The facts do not support a finding that invoicing Fleetwing for 33 out of hundreds of monitors defeated the purpose of the contract. *See* [78] ¶ 22 (Fleetwing had 484 units at the end of 2019 and ordered 545 additional units in 2020); ¶ 24 (November 2021 invoice included 961 monitoring units). Fleetwing claims the

16

overcharges on the 33 units subject to RMAs amounted to $596.05 per month out of a monthly invoice of $20,820.05 or a total overcharge of $3,576.30 between December 2020 and July 2021. [75] ¶¶ 37, 45; [73-8]. This is less than 0.5 percent of Plaintiffs' claimed damages. Accordingly, Fleetwing has failed to establish prior material breach based on charges for units subject to the RMA process. *See McCormick 106, LLC v. Capra*, 2022 IL App (2d) 210166-U, ¶ 66 (unreasonable to conclude affirmative defense of first-to-breach worth $300,000 excused performance on $4.7 million note – 6.4% of the plaintiff's claimed damages).

### b. Overbilling - Order Forms

Next, the Court turns to whether Plaintiffs committed a prior breach of the Tank Agreement by charging Fleetwing for tank monitoring units without executed order forms. *See* [74] at 6–8. During the litigation, Plaintiffs produced only five customer order forms covering 225 tank monitoring units, thus leaving approximately 700 of the 961 units at issue without produced order forms. [78] ¶ 22. Moreover, of the order forms that were produced, they did not include the requisite terms about the specific services ordered. [75] ¶ 44. Accordingly, Fleetwing contends Plaintiffs cannot establish that over 700 of the units are even subject to the terms of the Tank Agreement. [74] at 7. Plaintiffs dispute the order forms never existed just because they do not exist today. [77] at 6. Rather, it is Plaintiffs' position that (1) older order forms were subject to a one-year document retention policy and (2) relying on the testimony of SkyBitz Tank's salesperson responsible for the Fleetwing relationship, that the units would not have shipped to Fleetwing without an executed

17

order form. [78] ¶ 22. Regardless, just as the parties' course of performance constituted waiver of the written notice provision, so too does Fleetwing's payment on invoices absent order forms. [75] ¶ 28. *See Richelieu*, 67 F. Supp. 3d at 913. No reasonable jury could find invoicing without absent order forms constitutes a material breach.

There is no material dispute Plaintiffs provided tank monitoring units and monitoring services to Fleetwing – the principal requirement under the Tank Agreement. [75] ¶¶ 17–18. Accordingly, there is no material dispute that Plaintiffs substantially performed its contractual obligations.

## III.  Damages

Plaintiffs are seeking $712,256 in damages from Fleetwing: $606,941 for breach of the Tank Agreement and $105,315 in interest. [75] ¶¶ 40–41. This figure includes unpaid invoices, early termination fees, lost unit fees, and interest rate calculations. [78] ¶ 17. Fleetwing argues there is a material dispute of fact regarding damages. The Court agrees.

### a.  Damages Calculations

To reach the total damages demanded, Plaintiffs' damages expert, Joseph Egan reviewed the two final invoices/account statements prepared for Fleetwing, the underlying unpaid invoices identified in the final account statements, and the Tank Agreement. [75] ¶¶ 4243. To confirm the accuracy of the final account statements, Egan cross-checked the totals with the underlying unpaid invoices. *Id.* ¶ 44. And to assess early termination fees and lost unit fees, Egan reviewed a "statistically

sufficient" sample of the monitoring units listed in a spreadsheet produced by Plaintiffs in this litigation of Plaintiffs' internal calculations of the amounts owed by Fleetwing. [73-7] Egan Report ¶¶ 25, 27, 33–35. Egan reviewed each of the items in the sample to confirm the "Billable Organization Name, Location Name, RTU Number, Model Number, Rate Plan Name, Monthly Fee, Created on Date, In Service Date," and to match the unit to the system data for unit matching number and Created on Date. *Id.* ¶ 35.

Fleetwing disputes the accuracy of Egan's calculations because their calculations assume the accuracy of the underlying invoices. Without the order forms or a completed audit, Fleetwing contends Plaintiffs have not established the existence of Subscriptions or the accuracy of the invoices.[6] [75] ¶¶ 40, 44. While the Court disagrees that the lack of produced order forms is dispositive, here, evidence from Plaintiffs' own employees creates a material dispute of fact regarding the accuracy of the underlying invoices used to calculate damages. *See, e.g.*, [78-1] at SKYBITZ_0001496 (7/26/22 email from S. Deitch stating "[SkyBitz Tank] prodded [Fleetwing] – for years – to clean up their account.").

### b. Early Termination and Lost Unit Fees

For judicial efficiency, the Court will also address the enforceability of the early termination and lost unit fees. Under the terms of the Tank Agreement, Fleetwing must pay SkyBitz Tank fees for early termination and any non-returned tank

---

[6] Fleetwing also argues Egan did not review to determine whether any of the units were subject to outstanding RMAs. [75] ¶ 45. But Egan excluded units subject to outstanding RMAs from his analysis. [78] ¶ 7.

monitoring units. [73-6] Tank Agreement at Schedule A. The early termination fee is a multiplier of the monthly subscription fee and the lost unit fee is 12 times the applicable subscription fee. *Id.* Plaintiffs charged Fleetwing $313,108 for early termination and $156,504 for non-returned tank monitoring units plus tax. [76-12] SkyBitz Tank Monitoring Invoice No. INV00074441, dated 6/30/22. Fleetwing argues these early termination and lost unit fees Plaintiffs seek to recover are unenforceable penalties that violate Illinois public policy. [74] at 14–15. The Court agrees.

When interpreting contract provisions that specify damages, Illinois law distinguishes between liquidated damages provisions, which are enforceable, and penalty provisions, which are not. *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001). This is a question of law. *Id.* at 562. A court is likely to find a clause is an enforceable liquidated damages provision if: (1) the actual damages from a breach are difficult to measure at the time the contract was made; and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach. *Id.* A clause is likely a penalty when the sole purpose of the clause is to secure performance of the contract. *Id.*

Both fees are unenforceable. The early termination fee bears no relation to the the severity of Fleetwing's breach and operates as a windfall to Plaintiffs. As to the lost unit fee, the Court is not satisfied that actual damages from lost units would be difficult or impossible to calculate. Both fees seek to secure performance from Fleetwing. "It is a general rule of contract law that, for reasons of public policy, a liquidated damages clause that operates as a penalty for nonperformance or as a

threat to secure performance will not be enforced." *Jameson Realty Group v. Kostiner*, 813 N.E.2d 1124, 1130 (Ill. App. 1st Dist. 2004)

## CONCLUSION

For the stated reasons, Plaintiffs' motion for summary judgment [71]; [72] is granted as to Fleetwing's counterclaim and denied as to Plaintiffs' Count I. Fleetwing's request to supplement the record [79] is granted.

E N T E R :

Dated: February 2, 2026

MARY M. ROWLAND
United States District Judge

21